**Stephen W. Kessler #8547**
3360 SW Harrison
Topeka, Kansas 66611
(785)266-5922

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### TOPEKA DOCKET

**UNITED STATES OF AMERICA,**
                    **Plaintiff**

            **vs.**                                    **Case No. 5:02CR40069-002-SAC**

**FRANK D. HECK,**
                            **Defendant**

### SENTENCING MEMORANDUM

The defendant Frank D. Heck submits this Memorandum to assist the court in imposing sentence in this case.

On November 24, 2003, the defendant was found guilty by a jury of the following offenses:  Count 1, conspiracy to commit health care fraud, wire fraud and money laundering in violation of 18 U.S.C. § 371; Counts 2 through 13, health care fraud in violation of 18 U.S.C. § 1347(1) and (2); and Counts 14 and 15, wire fraud in violation of 18 U.S.C. § 1343 and 2; and Counts 16 through 29, money laundering in violation of 18 U.S.C. § 1957 and 2.

An extensive pre-sentence report has been prepared in this case as well as an addendum to that report.  The defendant's objections to certain findings in the pre-

sentence report have been set forth in the addendum to the pre-sentence report and in a separate document filed in this case entitled Objections to Pre-Sentence report.

The indictment in the case alleges that the defendant and his co-defendants received $642,972.82 to which they were not entitled from the United States Department of Health and Human Services in the Health Care Financing Administration. The indictment alleged that these funds were received as to result of over billing by the defendants for durable medical equipment provided to Medicare beneficiaries. Specifically, it was alleged that the defendants up-coded certain claims by billing for more expensive items than those they provided to beneficiaries.

The pre-sentence report in this case establishes a loss figure of $3,504,520.23. This was based upon information presented to the PSI writer by the government concerning 1,240 paid claims which were allegedly up-coded. Medicare paid the amount of $2,803,616.19 for these claims which is 80% of $3,504,520.23. Supplemental insurance and beneficiaries were billed for the remaining 20% of the $3,504,520.23. The PSI writer further found that an outstanding balance of $1,265,389.26 was owed to Invacare and constituted part of the loss resulting from the health care fraud of which defendant was convicted. The PSI establishes a base offense level of 6 for Counts 1 and Counts 2 – 13. It increased this amount by 13 levels based upon a total loss of $4,769,909.49. For Counts 14 and 15, Wire Fraud, the PSI set a base offense level of 6 and again increased that level by 13 levels based on a finding that the amount of loss was $4,769,909.49. An additional 2 points were added for more than minimal planning and 2 points were added because the defendant was viewed as an organizer or leader resulting in a total offense level of 23 for these counts.

Counts 16 through 29 were found by the pre-sentence writer to have a base offense level of 17.  Based upon loss in the amount of $1,515,440.02 found by the pre-sentence report writer 5 points were added to the base offense level.  Two points were also added because the defendant was viewed as an organizer or leader.  This resulted in an adjusted offense level of 24 for counts 16 through 29, money laundering.

The pre-sentence report arrived at a combined adjusted offense level of 26.  For the reasons set forth in the defendants objections to the pre-sentence report it is his position that the total adjusted offense level should be 21.

Subsequent to the United States Supreme Court ruling in United States v. Booker, 125 S.Ct. 738 (2005) the court is required to consider the guidelines but is directed to impose a reasonable sentence.  Booker found that the ruling in Blakely v. Washington, 124 S.Ct. 2531 (2004) applied to the federal sentencing guidelines.  Based on the rulings in Blakely and Apprendi v. New Jersey, 530 U.S. 466 (2000) the court cannot impose a sentence based upon facts not found by the jury beyond a reasonable doubt.  The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the punishment imposed above the lawful sentence that could be imposed absent that fact.  The ruling in Booker did not alter these due process restraints on sentencing.  The fifth amendment requires proof beyond a reasonable doubt of any fact which increases a sentence beyond that which could have been imposed based upon facts found by a jury.

Under Booker the sentence imposed must be within the statutory range and must also be reasonable.  It can never be reasonable to base any significant increase in a

3

defendant's sentence on facts that have not been found beyond a reasonable doubt. See Ring v. Arizona, 536 U.S. 584 (2002).

Booker found that the ruling in Blakely applied to the United States Sentencing Guidelines and that any sentence imposed could be based only on facts pled and proven or admitted. The loss pled and proven in this case was $642,972.82. The defendant's status as a leader or organizer was not pled or proven nor was the allegation that he used more than minimal planning in the commission of the offenses charged. Any sentence imposed cannot exceed that authorized by the Sentencing Guidelines for convictions of fraud and money laundering involving $642,972.82 without enhancements.

While the remedial majority in Booker authorized a reasonable sentence within statutory guidelines, any sentence in this case based in part on losses not found by the jury or enhancements not pled and proved would violate the Ex Post Facto Clause and the Due Process Clause.

The Ex Post Facto Clause absolutely bars the retroactive application of a criminal law to any offender whom the law disadvantages. Weaver v. Graham, 450 U.S. 24, 29 (1981). It is one the most fundamental principals in our constitution. See U.S. Const., Art. I, § 9, cl. 3; US Const., Art. I, § 10, cl. 1.

By its terms the Ex Post Facto Clause applies to changes in the law resulting from legislative or executive action. Protection against retroactive application of changes in judicial interpretation of criminal statutes is provided by the Due Process Clause. As explained by the Supreme Court in Bouie v. City of Columbia, 378 U.S. 347 (1964):

> [A]n unforeseeable judicial enlargement of a criminal statute, applied
> retroactively, operates precisely like an ex post facto law, such as Art. I, §

4

10, of the Constitution forbids.  An ex post facto law has been defined by this Court as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action," or "that aggravates a crime or makes it greater than it was, when committed."  If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.  The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred" must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures.  If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

Bouie applies to sentencing statutes as well as substantive statutes. See Johnson v. Kindt, 158 F.3d 1060 (10th Cir. 1998), cert. denied, 525 U.S. 1075 (1999).

The remedial opinion in Booker, authorizing reasonable sentences within statutory limits, cannot be used here to justify a sentence in excess of that authorized by the findings of the jury.  The test established by Bouie for determining when retroactive application of a judicial decision is precluded is satisfied here.  That test is basically one of foreseeability.  See Johnson v. Kindt, supra.  Booker cannot be fairly characterized as foreseeable at the time the offenses here were committed.

To the extent that the government seeks to rely on proof of any facts to enhance the defendant's sentence, those facts must be pled by indictment or information and either proved or admitted.  The facts relied upon by the pre-sentence report writer to determine the proposed guideline sentence in this case were not pled and have not been proven or admitted.  The amount of loss is limited to that stated in the indictment.  The indictment alleged overpayments in the amount of $642,972.82.

The pre-sentence report also advocates increasing the offense level by 2 points for more than minimal planning and an additional 2 points because the defendant was viewed as an organizer or leader.  Such enhancements are not based upon facts pled or proven. Due process requires that the guideline range be computed only upon facts plead in the indictment and found by the jury.

The court should consider the guidelines but only as to guideline findings based upon facts actually found by the jury.  Under 18 U.S.C. § 3553(a) the court must impose a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in that statute.  Those purposes are:  (a)  to reflect the seriousness of the offense, to promote respect for the law and to provide punishment for the offense;  (b)  to afford adequate deterrence to criminal conduct;  (c) to protect the public from further crimes of the defendant and  (d) to provide the defendant with a needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) also directs the sentencing court to consider the nature and circumstances of the offense and history and characteristics of the defendant, the kinds of sentences available and the need to provide restitution to any victims of the offense.

Booker makes it clear that courts may no longer uncritically apply the guidelines and depart only in unusual cases.

The advisory guidelines, as applied by the pre-sentence report, substantially overstate the amount of loss and therefore the seriousness of the offenses.  The discrepancy between the actual loss and that found in the PSI writers application of the guidelines is extreme and bears little relation to economic reality.

The guidelines fail to adequately take into account the fact that the wire fraud and money laundering counts were only incidental to the health care fraud counts.  The guidelines concerning money laundering are aimed primarily at the drug trade and not white collar fraud offenders.  (See U.S. v. Threadgill, 172 F.3d 357 (5th Cir. 1999); U.S. v. Woods, 159 F.3d 1132 (8th Cir. 1998).

The evidence showed that the defendant's did in fact provide medical equipment ordered by beneficiaries, yet providing aid to victims is not a factor considered by the guidelines.  See U.S. v. Tsosie, 14 F.3d 1438, 1443 (10th Cir. 1994).

The delay in charging the defendant resulted in his conviction after changes to the guidelines which affect the determination of amount of loss and were sentence to be imposed under the guidelines a downward departure would be appropriate (See, e.g., U.S. v. Gregory, 322 F.3d 1157 (9th Cir. 2003).

Under the guidelines courts were forbidden to consider the defendant's age, his education and vocational schools, his mental and emotional condition, his physical condition including drug or alcohol dependence, his family ties and responsibilities, his civic and military contributions and his lack of guidance as a youth.  (See U.S.S.G. 5h1).  Under 18 U.S.C. § 3553(a)(1) the sentencing court must consider these characteristics.

As set forth in the pre-sentence report in this case, this defendant has honorably served his country in the military, is in stable mental and emotional condition despite abuse suffered as a child, is in good physical condition, and has family ties and responsibilities. The defendant is responsible for the support of his two minor children. The defendant's history and character are positive and should be considered by the court in determining what is an appropriate sentence. The only aspect of the defendant's history that the guidelines permit the courts to consider is criminal history. The guidelines establish a criminal history category of II based on Mr. Heck's convictions for driving under the influence and misdemeanor assault. These offenses, while serious, did not include behavior which was in any way similar to the conduct which resulted in his conviction of the offenses in this case.

In addition, § 3553(a)(7) directs that courts consider the need to provide restitution to victims of the offense. Imposing probation or a shorter sentence of imprisonment will best accomplish this goal by allowing the defendant to work to make payments toward restitution. The guidelines do not account for this and in fact forbid departures to facilitate restitution.

The court should also note the defendant's conviction has had significant collateral effects on him. As a result of the conviction he can no longer work in the durable medical equipment field as he had done previously. He has been limited in his ability to find gainful employment since the conviction while waiting for sentencing to occur. As a result of his inability to work during the trial of this case and his employment at a lower rate of pay since trial he was unable to make scheduled mortgage payments and has lost his home. Subsequent to that the defendant and his wife separated. His

inability to engage in similar or related activities and the substantial loss of assets and income are a source of individual and general deterrence.

The crimes of which the defendant was convicted do not indicate that he poses a danger to society and, given his restriction on dealing with Medicare or other government agencies, he is highly unlikely to re-offend.

The needs of the public and the victim in this case do not indicate that a lengthy prison sentence would have much value as a deterrent. Those dealing with Medicare will generally follow the rules because their jobs and payment for their efforts depend upon it. If he is restricted from participating in government programs the public does not need to be protected from the defendant. As for the victim, the Department of Health and Human Services, the defendant's ability to make restitution would be greatly enhanced if he was not incarcerated for an overly long period of time.

As noted in the pre-sentence report, probation is not statutorily prohibited in this case and for the reasons set forth above would satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553.

In order to promote respect for the law and in recognition of the significant losses in this case, defendant is aware that the court may determine that confinement for a significant period of time is appropriate. The defendant suggests, however, that that period of time should be substantially less than that called for by the mechanical application of the sentencing guidelines.

A sentence of 30 months or less would make the defendant immediately eligible to participate in boot camp programs operated by the Bureau of Prisons. The defendant is physically able to participate in such a program and believes he could benefit therefrom.

9

Defendant requests that the Court impose a sentence of probation, or in the

alternative, a sentence of imprisonment of less that 30 months.

Respectfully submitted,


**s/ Stephen W. Kessler**
#8547
3360 SW Harrison
Topeka, Kansas 66611
(785)266-5922
FAX: (785)267-6384
swk@twinlakeslaw.com
Attorney for Frank Heck


## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2005, I electronically filed the foregoing
with the clerk of the court by using the CM/ECF system which will send a notice of
electronic filing to the following:

Tanya Treadway
Assistant U.S. Attorney
U.S. Federal Courthouse
444 SE Quincy – Room 290
Topeka, Kansas  66683
tanya.treadway@usdoj.gov
Attorney for Plaintiff

Melody Evans
Assistant Federal Public Defender
U.S. Post Office
424 S. Kansas Ave., Room 205
Topeka, KS 66603-3439
melody_evans@fd.org
Attorney for Terrance W. Cooper

Mark L. Bennett. Jr.
BENNETT & HENDRIX, L.L.P.
5605 S.W. Barrington Court South, Suite 201
Topeka, KS 66614-2489
mark@mlbjrlaw.com
Attorney for Paige A. Heck

**s/ Stephen W. Kessler #8547**


10